**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

James Jackson Ellsworth,      )   No. CV 11-8070-PCT-RCB (MEA)
                              )
          Plaintiff,          )       **O R D E R**
                              )
     vs.                      )
                              )
Prison Health Services, Inc., et al.,  )
                              )
          Defendants.         )
                              )
_____)

Plaintiff James Jackson Ellsworth brought this civil rights action under 42 U.S.C. § 1983 against Prison Health Services, Inc. (PHS),[1] and Dr. Kirsten Mortenson (Doc. 1). Before the Court is Defendants' Motion for Summary Judgment (Doc. 76), which Plaintiff opposes (Doc. 88).

The Court will deny Defendants' motion.

**I.      Background**

Plaintiff's claims arose during his confinement in the Mohave County Jail, where he was housed from December 2009-July 2010 (Doc. 1 at 1; Doc. 77, Defs.' Statement of Facts (DSOF) ¶ 1).  In his Complaint, Plaintiff stated that he has suffered from multiple sclerosis (MS) for many years (Doc. 1 at 4).  In Count I, he alleged that PHS would not allow treatment of his condition (id. at 3).  Plaintiff stated that in June 2010, he was transported to

---

[1]PHS has since been renamed "Corizon Health, Inc." (Doc. 76 at 1 n. 1).  The rights and obligations of PHS are properly asserted by and against Corizon Health, Inc.; however, for consistency with the pleadings and filings in this action, the Court and parties continue to use "PHS."

his personal neurologist, who prescribed medications and injections, but PHS refused to provide the treatment because it did not fall within PHS protocol (id.).

In Count II, Plaintiff claimed that Dr. Mortenson acted with deliberate indifference to his serious medical condition (id. at 4).  Plaintiff averred that when he saw Dr. Mortenson in January and February 2010, she informed Plaintiff that the jail did not stock medications for MS and that he would not be treated for MS (id.).  Plaintiff also alleged that, because his condition was interfering with his criminal trial, the state trial judge held a hearing concerning Plaintiff's medical treatment (id. at 4a).  According to Plaintiff, at this hearing, Dr. Mortenson testified that nothing could be done for his condition (id.).  Plaintiff alleged that during his confinement at the jail, Dr. Mortenson failed to treat his MS other than with Tylenol (id.).

The Court determined that Plaintiff stated Fourteenth Amendment deliberate indifference claims against PHS and Dr. Mortenson (Doc. 5 at 3-4) (noting that a pretrial detainee's claim for unconstitutional conditions of confinement arises under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment; however, the deliberate indifference standard may be applied).[2]

Defendants now move for summary judgment on the grounds that (1) there is no evidence of a PHS policy that resulted in the denial of treatment, (2) Dr. Mortenson was not deliberately indifferent to Plaintiff's serious medical needs, and (3) Plaintiff failed to provide expert medical opinion to establish his case (Doc. 76).

**II.    Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence

---

[2]Upon screening, the Court dismissed Counts III and IV and Jerry Brown and Bruce Brown as Defendants (Doc. 5).

1    of a genuine issue of material fact.  Celotex, 477 U.S. at 323.

2          If the movant meets its initial responsibility, the burden then shifts to the nonmovant

3    to demonstrate the existence of a factual dispute and that the fact in contention is material,

4    i.e., a fact that might affect the outcome of the suit under the governing law, and that the

5    dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

6    the nonmovant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986); see Triton

7    Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need

8    not establish a material issue of fact conclusively in its favor, First Nat'l Bank of Ariz. v.

9    Cities Serv. Co., 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific

10   facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v.

11   Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted); see Fed. R. Civ. P.

12   56(c)(1).

13         At summary judgment, the judge's function is not to weigh the evidence and

14   determine the truth but to determine whether there is a genuine issue for trial.  Anderson, 477

15   U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence, and draw all

16   inferences in the nonmovant's favor.  Id. at 255.  The court need consider only the cited

17   materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

18   **III.   Facts**

19         In support of their motion, Defendants submit a separate Statement of Facts (DSOF)

20   (Doc. 77), which is supported by the affidavits of Dr. Mortenson and Margaret Saltsgiver,

21   the Mohave County Jail Health Services Administrator (Doc. 76, Exs. A-B), and copies of

22   Plaintiff's medical records (Doc. 75).  In opposition, Plaintiff filed a corresponding separate

23   Statement of Facts (PSOF) (Doc. 89), which is supported by exhibits attached to his

24   response, his affidavit, and a supplement to his response—which includes medical records

25   from the Arizona Department of Corrections (ADC) (Docs. 88, 90-91).

26         The undisputed and disputed facts relevant to Plaintiff's claims are as follows:

27         Plaintiff was housed at the Mohave County Jail from December 17, 2009 until July

28   14, 2010 (DSOF ¶ 1; PSOF ¶ 1).  Plaintiff states that on December 17, 2009, during his initial

1   medical history and assessment at the jail, Plaintiff advised medical staff that he suffered

2   from MS and was taking Avonex, Gabapentin, and Elavil (PSOF ¶ 10). Records from the

3   office of Dr. Nayer, Plaintiff's neurologist, indicate that Avonex was prescribed to treat

4   Plaintiff's MS (DSOF ¶ 9). Defendants state that at this initial assessment, Plaintiff advised

5   medical staff that he had missed several doses of Avonex prior to his incarceration (DSOF

6   ¶ 10).

7        Dr. Mortenson is a doctor of osteopathy and is board certified in family practice (Doc.

8   76, Ex. B, Mortenson Aff. ¶ 1; Doc. 88, Attach. D, Mortenson Resp. to Interrog. No. 1 (Doc.

9   88 at 39)[3]).

10       Defendants state that Dr. Mortenson saw Plaintiff on January 29, 2010, at which time

11  she noted that Plaintiff was suffering from an MS exacerbation, an acute appearance of new

12  symptoms and/or worsening of old symptoms (DSOF ¶ 15; PSOF ¶ 15). Defendants state

13  that Dr. Mortenson concluded that it was not appropriate to administer Avonex to a patient

14  during a period of MS exacerbation (DSOF ¶ 16).

15       In February 2010, the jail's medical unit received a prescription from Dr. Nayer's

16  office that prescribed Avonex for Plaintiff (PSOF ¶ 12; DSOF ¶ 12). Defendants state that

17  Dr. Mortenson considered this prescription to be a recommendation by Dr. Nayer regarding

18  treatment for Plaintiff's MS (DSOF ¶ 12). Dr. Mortenson did not approve the Avonex (id.

19  ¶ 25). Defendants state that she concluded that any potential benefit from Avonex was

20  outweighed by concerns that the medication would suppress Plaintiff's immune system and

21  put him at a greater risk for disease (DSOF ¶ 14).

22       Dr. Mortenson saw Plaintiff again on February 11, March 15, and April 9, 2010

23  (DSOF ¶ 34; PSOF ¶ 34). Defendants state that at each visit, Dr. Mortenson monitored

24  Plaintiff's MS and explained treatment options to him (DSOF ¶ 34). Plaintiff states that at

25  each visit, Dr. Mortenson informed him that she would not treat his MS (PSOF ¶ 34).

26

27

28       [3]Additional citation refers to the page number in the Court's Case
    Management/Electronic Case Filing system.

1       In either March or April 2010, during the course of Plaintiff's criminal proceedings,

2 the Mohave Superior Court held a hearing concerning Plaintiff's medical treatment at the jail

3 (Doc. 1 at 4A; Mohave County Superior Court, CR 200901368, March 22, 2010 and April

4 19, 2010 hearings).  See United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) (a court

5 may take judicial notice of records in other cases).  Plaintiff states that Dr. Mortenson

6 testified that there was nothing that could be done for Plaintiff because PHS protocol does

7 not allow treatment (Doc. 1 at 4A; Doc. 90, Pl. Aff. ¶ 32).

8       On April 9, 2010, Dr. Mortenson ordered Tylenol 650 mg as treatment for Plaintiff's

9 pain (DSOF ¶ 28).  Defendants state that the Tylenol was not renewed because Plaintiff

10 indicated he did not want chronic care visits that were necessary to renew the Tylenol (id.

11 ¶ 29).  Plaintiff states that he informed Dr. Mortenson that the Tylenol was not working and

12 she responded that she would not prescribe any other medication for pain (PSOF ¶ 29).

13       Defendants state that on April 14, 2010, Dr. Mortenson consulted with Dr. Nayer by

14 telephone and noted in the medical records that Dr. Nayer agreed that it was not appropriate

15 to administer Avonex to a patient during periods of MS exacerbation (id. ¶ 17).

16       On June 2, 2010, Plaintiff was transported to Dr. Nayer's office for a consultation

17 (DSOF ¶ 20; PSOF ¶ 20).  Dr. Nayer's office issued a consulting physician form that

18 included a recommendation that Plaintiff be provided certain medications, including Avonex

19 (DSOF ¶ 21; PSOF ¶ 21).  Dr. Mortenson states that she reviewed the consulting physician

20 form but concluded that in her judgment, Avonex was not appropriate for treating Plaintiff's

21 MS during his incarceration at the jail due to concerns that he would suppress his immune

22 system (DSOF ¶ 22).

23       On June 23, 2010, Dr. Mortenson ordered Carbamazepine for Plaintiff's MS (DSOF

24 ¶ 27).  Plaintiff had not ever previously been prescribed Carbamazepine for MS (PSOF ¶ 27).

25       Plaintiff was transferred to the custody of the Arizona Department of Corrections

26 (ADC) on or around July 14, 2010 (DSOF ¶ 1; PSOF ¶ 1).

27       On October 21, 2010, Dr. Sharp, the treating ADC physician, issued an "urgent" non-

28 formulary drug request for Avonex (Doc. 91, Attachs.).  The medical records reflect that

1   Avonex was requested to replace the formulary drug Carbamazepine because Avonex was

2   preferable and that, based on documentation from Dr. Nayer, the Avonex was to be started

3   "ASAP" (id.).

4   **IV.   Analysis**

5          Plaintiff sets forth one claim against PHS and one against Dr. Mortenson.  These two

6   claims are intertwined because to maintain a claim against PHS as an entity, Plaintiff must

7   first establish that he was deprived of a constitutional right; that is, that Dr. Mortenson's care

8   or lack of care constituted deliberate indifference.  See Mabe v. San Bernardino County,

9   Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1110 (9th Cir. 2001).  If Plaintiff satisfies this first

10  prong, he must then establish that PHS had a policy or custom; that the policy or custom

11  amounted to deliberate indifference to Plaintiff's constitutional right; and that the policy

12  or custom was the moving force behind the constitutional violation.  Id. at 1110-11.

13  Accordingly, the Court will first address the medical-care claim against Dr. Mortenson.

14         **A.   Medical Care**

15              **1. Legal Standard**

16         Pretrial detainees are protected by the Fourteenth Amendment's Due Process clause,

17  which establishes that "detainees have a right against jail conditions or restrictions that

18  'amount to punishment.'"  Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008)

19  (citing Bell v. Wolfish, 441 U.S. 520, 535-37 (1979)).  The Fourteenth Amendment standard

20  is more protective than the Eighth Amendment standard, which protects convicted prisoners

21  against cruel and unusual punishment.  Pierce, 526 F.3d at 1205.  Nonetheless, the Eighth

22  Amendment deliberate-indifference standard is applied to medical-care claims brought by

23  pretrial detainees against jail officials.  Simmons v. Navajo County, Ariz., 609 F.3d 1011,

24  1017 (9th Cir. 2010) (citations omitted).

25         Under the Eighth Amendment standard, a prisoner must demonstrate "deliberate

26  indifference to serious medical needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)

27  (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  There are two prongs to the deliberate-

28  indifference analysis: an objective standard and a subjective standard.  First, a prisoner must

show a "serious medical need." <u>Jett</u>, 439 F.3d at 1096 (citations omitted).  A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted).

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. <u>Jett</u>, 439 F.3d at 1096.  The state of mind required for deliberate indifference is subjective recklessness; however, "the standard is 'less stringent in cases involving a prisoner's medical needs . . . because the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th Cir. 2012) (quoting <u>McGuckin</u>, 974 F.2d at 1060).  To show deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that the defendant "chose this course in conscious disregard of an excessive risk to plaintiff's health." <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted).  This second prong is met if the prisoner demonstrates (1) a purposeful act or failure to respond to a prisoner's medical need and (2) harm caused by the indifference.  <u>Id.</u>

Prison officials are deliberately indifferent to a prisoner's serious medical needs if they deny, delay, or intentionally interfere with medical treatment.  <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990).  But a delay in providing medical treatment does not constitute an Eighth Amendment violation unless the delay was harmful.  <u>Hunt v. Dental Dep't</u>, 865 F.2d 198, 200 (9th Cir. 1989) (citing <u>Shapley v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)).  And a difference of opinion as to which medically acceptable course of treatment should be followed does not amount to deliberate indifference.  <u>See</u> <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989).

### 2. Arguments

#### a. Defendants' Motion

Defendants argue that Dr. Mortenson was not deliberately indifferent to Plaintiff's

- 7 -

serious medical needs as evidenced by the record, which they claim shows that she saw Plaintiff on seven occasions from December 2009-July 2010, and that at each visit she monitored Plaintiff's MS and explained the treatment options to him (Doc. 76 at 10). Defendants assert that Dr. Mortenson consulted with Dr. Nayer and arranged for Plaintiff's transport to Dr. Nayer's office and that Dr. Mortenson reviewed the recommendations from Dr. Nayer's office (id.). Defendants contend that although the recommendations included a prescription for Avonex, Dr. Mortenson made the decision to decline that recommendation based on her medical judgment that Avonex could suppress Plaintiff's immune system and put him at risk, and she determined that Tylenol and Carbamazepine were appropriate medications for Plaintiff's MS (id.). Defendants argue that Plaintiff's claim merely raises a difference of medical opinion regarding treatment, which is insufficient to support a deliberate-indifference claim (id. at 11).

Defendants further argue that Plaintiff failed to provide any competent medical opinion or testimony to establish that Dr. Mortenson's conduct was negligent or unlawful (id.). Defendants state that expert testimony is required to show that Dr. Mortenson's treatment plan for Plaintiff's MS was medical unacceptable in light of the circumstances and that it was chosen in conscious disregard of an excessive risk to Plaintiff's health (id.). They submit that absent such evidence, Plaintiff cannot support his deliberate-indifference claim (id. at 11-12).

### b. *Plaintiff's Response*[4]

In response, Plaintiff asserts that Defendants were aware that he had MS upon his arrival at the jail in December 2009, and he states that his condition is extremely painful and debilitating and constitutes a serious medical need (Doc. 88 at 1-2, 5). Plaintiff avers that he wakes up in severe pain every day, suffers pain all day, and the pain does not let up when he tries to go to sleep (id. at 2). According to Plaintiff, the more sleep he loses, the more pain

---

[4]The Court issued a Notice, required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), informing Plaintiff of his obligation to respond to Defendants' motion and the requirements under Federal Rule of Civil Procedure 56 (Doc. 80).

he suffers (id.).

Plaintiff states although Defendants were notified of his condition, Dr. Mortenson did not prescribe a recognized treatment for MS, Carbamazepine, until June 2010—six months after his incarceration began (id.).  Plaintiff asserts that Defendants' argument is essentially that non-treatment of his MS for six months was proper medical care (id.).  Plaintiff maintains that Dr. Mortenson had to know of the pain associated with MS, yet she disregarded his condition and she chose to do nothing to treat Plaintiff's MS for six months (id. at 5).

Plaintiff states that there is no support for Dr. Mortenson's claim that Avonex suppresses the immune system to the point that it should be avoided, and he proffers medical fact sheets about Avonex (id. at 3).  He also he points to Dr. Mortenson's affidavit statement that she is not aware of a treatment for MS exacerbations, and he argues that despite her admissions that she does not know how to treat MS and rarely treats patients with MS, Dr. Mortenson refused to follow recommendations from a neurologist who treats MS patients every day (id. at 3-4).  Plaintiff contends that the fact that he was prescribed and provided Avonex after his transfer to ADC belies Dr. Mortenson's claim that Avonex was not appropriate for a prison environment and further supports that she was not trained in the area of neurology (Doc. 91, Attach.).

### c. Defendants' Reply

Defendants reply that there is no dispute that Dr. Mortenson saw Plaintiff on seven occasions between December 2009 and July 2010, and that "during the period at issue, he suffered [MS] exacerbations" (Doc. 92 at 4).

Defendants object to the medical records from ADC showing that Avonex was prescribed to Plaintiff after his transfer (id. 4-5).  They argue that the records are unauthenticated, lack foundation, and are not relevant (id.).  Defendants also note that contrary to Plaintiff's assertion, Dr. Mortenson did not claim that Dr. Nayer agreed with her assessment that Avonex was not suitable for a prison environment; rather, Dr. Mortenson assessed that Avonex was not appropriate medication during an exacerbation, and Dr. Nayer

1    agreed with her (id. at 5).

2         Defendants reiterate that Dr. Mortenson had a telephone consult with Dr. Nayer on

3    April 14, 2010, and two months later she requested and obtained approval for Plaintiff to see

4    Dr. Nayer on June 2, 2010 (id.).    Defendants restate that Dr. Mortenson considered

5    recommendations from Dr. Nayer's office but concluded that Avonex was not appropriate

6    due to concerns about a suppressed immune system (id.).  Defendants object to Plaintiff's

7    medical fact sheets about medications and MS treatment, including information from the

8    National Multiple Sclerosis Society, on the grounds that the documents are not authenticated,

9    lack foundation, and contain hearsay (id. at 6).

10        Next, Defendants assert that Plaintiff's claim is limited to the time period of January

11   and February 2010, because in his pleading he alleged that in January and February, Dr.

12   Mortenson told him that the jail did not have his requested medications and that she told him

13   he would not receive MS treatment (id., citing Doc. 1, Count II).  Defendants therefore argue

14   that Plaintiff's allegations that he told Dr. Mortenson that Tylenol was not working are

15   outside of the January-February 2010 time frame and should not be considered (id. at 7).

16   Defendants also submit that Plaintiff's Sick Call Requests, submitted with their motion, do

17   not support his claim that Tylenol was not working or that he ever informed Dr. Mortenson

18   that Tylenol was not working (id.).

19        Finally, Defendants restate that Plaintiff simply disagrees with Dr. Mortenson's

20   medical judgement, but he is not a medical expert and does not understand the medical

21   determinations made regarding his treatment (id. at 8).  Defendants note that it is well-

22   established that courts should not second-guess medical providers' judgment, yet that is what

23   Plaintiff seeks in this case (id.).  They maintain that because Plaintiff has not shown that Dr.

24   Mortenson was aware of and disregarded an excessive risk to Plaintiff's health, his claim

25   fails (id. at 8-9).

26                          **3. Procedural Issues**

27        Before analyzing the deliberate-indifference claim, the Court must address the

28   procedural issues and objections raised by Defendants in their reply.

1       First, contrary to Defendants' contention, Plaintiff's claim is not limited to the

2   January-February 2010 time period.   The supporting facts in Count II of Plaintiff's

3   Complaint include references to specific events in January and February 2010, but the

4   allegations go beyond that short time span, and Plaintiff specifically alleged that "at no time

5   during Plaintiff's stay in the Mohave County jail" did he receive proper care for his MS

6   (Doc. 1 at 4A).   Also, in his opposition to summary judgment, Plaintiff argues that Dr.

7   Mortenson did not prescribe what she considered treatment—Carbamazepine—until six

8   months after he entered the jail (Doc. 88 at 1-2).   See Alvarez v. Hill, 518 F.3d 1152, 1158

9   (9th Cir. 2008) (a court must afford pro se plaintiff the benefit of any doubt in ascertaining

10  what claims he raised, and pro se plaintiff may bolster his claim by making more specific

11  allegations and arguments in later filings) (citations omitted).   The Court finds that Plaintiff's

12  deliberate-indifference claim relates to the December 2009-July 2010 period he was housed

13  at the Mohave County Jail.

14      Defendants' objection to the ADC medical records proffered by Plaintiff will be

15  overruled.   The face of these documents show that they are ADC forms documenting medical

16  progress records and a non-formulary drug request (Doc. 91, Attachs.).   Further, each

17  document is dated and contains Plaintiff's name, and the information within the records

18  coincides with Plaintiff's representations (id.).   See Fed. R. Evid. 901(b)(4) (evidence may

19  be authenticated by "appearance, contents, substance, . . . taken together with all the

20  circumstances").   The Court also finds that the medical records may be relevant to Plaintiff's

21  claim.

22      Defendants' objection to the medication-fact sheet print-outs and information from

23  the National Multiple Sclerosis Society will be sustained.   Although most of these documents

24  include the internet address at the bottom of the page and appear to be public in nature,

25  "[p]rintouts from a web site do not bear the indicia of reliability demanded for other self-

26  authenticating documents under Fed. R. Evid. 902.   To be authenticated, some statement or

27  affidavit from someone with knowledge is required[.]"   In re Homestore.com., Inc. v.

28  Securities Litigation, 347 F. Supp. 2d 769, 782 (C.D. Cal. 2004).   These documents are not

1   self-authenticating, and there is no affidavit to authenticate them.

2                                    **4. Deliberate Indifference**

3         Defendants do not argue that Plaintiff did not have a serious medical need, and the

4   record reflects that Plaintiff had MS and suffered pain.  The evidence supports that his

5   condition was worthy of treatment and constituted a serious medical need.  See McGuckin,

6   974 F.2d at 1059-60 (examples of a serious medical need include "[t]he existence of an

7   injury that a reasonable doctor or patient would find important and worthy of comment or

8   treatment; the presence of a medical condition that significantly affects an individual's daily

9   activities; or the existence of chronic and substantial pain").  The Eighth Amendment

10  analysis therefore turns on the subjective prong—whether Dr. Mortenson's response to

11  Plaintiff's serious medical need was deliberately indifferent.  See Jett, 439 F.3d at 1096.

12        There is no dispute that Plaintiff notified medical staff of his MS condition when he

13  arrived at the jail in December 2009 and Dr. Mortenson was aware of his condition.  Further,

14  the record reflects that Plaintiff notified medical staff in December 2009 that he was taking

15  Avonex, Gabapentin, and Elavil (Doc. 89, PSOF ¶ 10; see Doc. 77, DSOF ¶ 10).

16        The record shows that in response to Plaintiff's condition, Dr. Mortenson saw Plaintiff

17  on at least seven occasions (Doc. 77, DSOF ¶ 34).  The parties dispute what transpired during

18  these visits; Plaintiff states Dr. Mortenson told him nothing could be done, and Defendants

19  state that she monitored his condition and explained the treatment options (Doc. 77, DSOF

20  ¶ 34; Doc. 89, PSOF ¶ 34).  The medical records for these visits reflect that Plaintiff's

21  condition was monitored and documented.  For example, the records indicate that on January

22  29, 2010, Plaintiff had "weakness, staggering, paresthesia" (Doc. 75, Bates No. 115 (Doc.

23  75 at 116));[5] on February 11, 2010, Plaintiff was "dragging L leg" (id., Bates No. 114 (Doc.

24  75 at 115); on March 15, 2010, Plaintiff was "continuing to have pain" (id., Bates No. 117

25  (Doc. 75 at 118)); and on April 9, 2010, "leg getting more difficult to move" and increase in

26  pain (id., Bates No. 116 (Doc. 75 at 117)).

27

28        [5]Paresthesia is "an abnormal sensation, such as of burning, pricking, tickling, or
    tingling."  Stedman's Medical Dictionary paresthesia (27th ed. 2000).

                                            - 12 -

Defendants do not indicate, nor does Dr. Mortenson state in her affidavit, what the treatment options were that she discussed with Plaintiff.  The medical records document that on February 11, 2010, she "discussed with [Plaintiff] that options are limited here due to risk of exposure [illegible] & that we don't provide OTC (over-the-counter) meds and meds that are not indicated for the tx [treatment] of his condition" (id., Bates No. 114 (Doc. 75 at 115)).  One other record, dated March 15, 2010, states that Dr. Mortenson "discussed may need walker" (id., Bates No. 117 (Doc. 75 at 118)).  No other records refer to MS treatment options or discussions with Plaintiff, and there is no indication that Plaintiff ever received a walker.

There is nothing in the record to show that Plaintiff was provided any treatment other than on April 9, 2010, when Dr. Mortenson ordered Tylenol for Plaintiff's pain (Doc. 77, DSOF ¶ 28), and on June 23, 2010, when she ordered Carbamazepine as treatment for Plaintiff's MS, specifically for numbness  (id. ¶ 27; Doc. 76, Attach., Mortenson Aff. ¶ 11 (Doc. 76-1 at 13-14)).  And Plaintiff received an outside consult visit with Dr. Nayer's office on June 2, 2010, which resulted in that office issuing prescriptions for Elavil and Avonex that Dr. Mortenson rejected (Doc. 77, DSOF ¶¶ 20-22; see Doc. 75 at 81).

Although the record establishes that Plaintiff was seen numerous times by Dr. Mortenson, that alone does not prohibit a finding of deliberate indifference.  See Estelle, 429 U.S. at 105 & n. 10 (the treatment received by a prisoner can be so bad that the treatment itself manifests deliberate indifference); Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (prisoner does not have to prove that he was completely denied medical care); Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989) ("access to medical staff is meaningless unless that staff is competent and can render competent care").  At issue is whether Dr. Mortenson's course of treatment was medically unacceptable; namely, (1) her decision to not approve Avonex in the circumstances, including the fact that Plaintiff was on Avonex when he arrived at the jail and the treating specialist recommended Avonex, (2) her decision to not provide any other MS medication until June 23, 2010 (Carbamazepine), and (3) her decision to provide no medication for pain until April 9, 2010.

1    Dr. Mortenson states that Avonex was not prescribed because of an MS exacerbation,

2  yet the evidence does not establish that Plaintiff suffered an MS exacerbation during the

3  entire time he was housed at the jail; indeed, the medical records document an MS

4  exacerbation only at the January 29, 2010 medical visit (Doc. 75, Bates No. 115 (Doc. 75 at

5  116); see Bates No. 114 (Feb. 11, 2010 note stating that last exacerbation was Jan. 26, 2010)

6  (Doc. 75 at 115)).  Further, although Defendants argue that Dr. Mortenson's request for

7  Plaintiff to see the specialist on June 2, 2010 supports that she was not deliberately

8  indifferent, Dr. Mortenson thereafter refused to approve the prescriptions for Avonex and

9  Elavil issued by Dr. Nayer's office after that appointment (see Doc. 75, Bates No. 80 (June

10  2, 2010 scripts from Dr. Nayer) (Doc. 75 at 81)).

11    The parties dispute whether Plaintiff told Dr. Mortenson that the Tylenol provided to

12  him in April 2010 did not work, and Defendants note that in a May 2010 Sick Call Request,

13  Plaintiff inquired why the Tylenol was stopped, suggesting that is was working (Doc. 75,

14  Bates No. 95 (Doc. 75 at 96)).  The response to this Request and a subsequent Sick Call

15  Request reflect that the 30-day order for Tylenol was not renewed after Plaintiff refused to

16  discuss chronic care with Dr. Mortenson and accused her of refusing to treat his MS, which

17  medical staff construed as a refusal of care (id., Bates Nos. 94-95 (Doc. 75 at 95-96)).

18    Regardless of the Tylenol dispute, the medical records and Plaintiff's Sick Call

19  Requests support that Plaintiff suffered worsening pain and MS symptoms throughout his

20  stay at the jail.  See Hunt, 865 F.2d at 200 (the plaintiff must show that any delay in

21  treatment was harmful).  The Sick Call Requests document the following reports made by

22  Plaintiff: in January 2010, "my MS is acting up.  I'm losing feeling in my legs and feet . . .

23  feeling is pins and needles, numb and cold" (Doc. 75, Bates No. 99 (Doc. 75 at 100)); in

24  April 2010, "my MS is acting up worse.  I have been in pain to the point sleeping is hard[,]

25  sitting and laying hurts" (id., Bates No. 97 (Doc. 75 at 98)); in May 2010, "the pain is getting

26  to the point it is unbearable" (id., Bates No. 93 (Doc. 75 at 94)); and on June 7, 2010—just

27  after his outside consult, "the pain is getting worse.  When [are] my meds going to start?"

28  (Id., Bates No. 92 (Doc. 75 at 93)).

1    On this record, there is a genuine issue of material fact whether Dr. Mortenson's

2    course of treatment for Plaintiff's serious medical need was medically unacceptable in light

3    of evidence that the treatment was delayed for months, it was ineffective, and it was contrary

4    to a specialist's recommendations.  Although a difference of medical opinion is not enough

5    to establish deliberate indifference, the Ninth Circuit has held that a non-specialist

6    physician's denial of treatment recommendations from specialists may raise triable issues of

7    fact whether that denial was medically unacceptable.  Snow, 681 F.3d at 988-89 (finding it

8    unreasonable for the defendants—physicians board-certified in family medicine—to rely on

9    their own non-specialized medical conclusions to continue indefinite course of steroids and

10   anti-inflammatory drugs when orthopedic surgeons hired to consult on the case had

11   recommended surgery).

12   Moreover, in deciding whether there exist disputed material facts regarding deliberate

13   indifference to Plaintiff's serious medical need, the Court need not automatically defer to the

14   judgment of Dr. Mortenson.  See id. at 985-86 (citing Hunt, 865 F.2d at 200) ("[i]n deciding

15   whether there has been deliberate indifference to an inmate's serious medical needs, we need

16   not defer to the judgment of prison doctors or administrators").  This is true even if there is

17   no separate expert opinion affidavit submitted by Plaintiff.  The state statute on which

18   Defendants rely applies only to state claims for negligence.  Ariz. Rev. Stat. § 12-2603.

19   Plaintiff does not allege any state-law negligence claims; his claims are solely under § 1983

20   for constitutional violations (see Docs. 1, 5); see Sethy v. Alameda County Water Dist., 545

21   F.2d 1157, 1162 (9th Cir. 1976) ("a plaintiff seeking in federal court to vindicate a federally

22   created right cannot be made to jump through the procedural hoops for tort-type cases that

23   may have commended themselves to the legislative assemblies of the several states"); Amor

24   v. State, 2010 WL 960379, at * 6 (D. Ariz. March 15, 2010) (state statute applies "where a

25   federal court exercises supplemental jurisdiction over state law claims").  The Court notes

26   that the evidence includes expert medical opinion in the form of treatment recommendations

27   from Dr. Nayer, an expert, and this evidence supports Plaintiff's opposition to summary

28   judgment.

1    "Deliberate indifference to medical needs may be shown by circumstantial evidence

2    when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm."

3    Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003) (citations omitted).  The Court

4    finds that there are sufficient facts from which a jury could find that Dr. Mortenson was

5    aware of Plaintiff's MS condition and the need for treatment and was aware of the

6    recommended treatment by the treating neurologist, and that her decision to nonetheless deny

7    the recommended treatment and deny any other sufficient treatment for months was

8    deliberately indifferent to Plaintiff's serious medical need.  Summary judgment will therefore

9    be denied to Dr. Mortenson on Count II.

10        **B.    PHS Liability**

11        Because there is a material factual dispute whether Dr. Mortenson's care constituted

12    deliberate indifference, the first prong of the claim against PHS is met.  Plaintiff must next

13    show that PHS had a policy or custom that amounted to deliberate indifference and that the

14    policy was the moving force behind the constitutional deprivation.  See Mabe, 237 F.3d at

15    1110-11.

16        **1.  Legal Standard**

17        An entity may not be sued under § 1983 solely because one of its employees inflicted

18    a constitutional injury.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).  But an

19    entity may be sued if the execution of its policy or custom inflicts an injury.  Id.  A policy

20    is "a deliberate choice to follow a course of action" made by the officials or entity

21    "responsible for establishing final policy with respect to the subject matter in question."

22    Oviatt v. Pearce, 954 F.2d 1470, 1477 (9th Cir. 1992).  A policy can be one of action or

23    inaction.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

24        A failure to enact a policy may also give rise to a violation of constitutional rights.

25    The Ninth Circuit "consistently has found that [an entity's] lack of affirmative policies or

26    procedures to guide employees can amount to deliberate indifference, even when the [entity]

27    has other general policies in place."  Id. at 1189; see Erdman v. Cochise County, Ariz., 926

28    F.2d 877, 881 (9th Cir. 1991) ("[i]n this case, no policy or custom, (or even the absence of

a policy or custom), of Cochise County or the City of Douglas deprived plaintiff of his constitutional rights.").  The lack of needed policy is sufficient for liability where the lack of procedures is "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers . . . can reasonably be said to have been deliberately indifferent to the need."  City of Canton v. Harris, 489 U.S. 378, 390 (1989).

To be the "moving force" behind a constitutional injury, the "identified deficiency" in the entity's policy must be found to be "closely related to the ultimate injury."  Gibson v. County of Washoe, 290 F.3d 1175, 1196 (9th Cir. 2002) (citation omitted).  The plaintiff must show that had the policy or practice been different, the injury would have been avoided.  Id. (citing Oviatt, 954 F.2d at 1478).

### 2.  Arguments

#### a. Defendants' Motion

Defendants argue that Plaintiff cannot show that PHS maintained a policy or custom that resulted in an act or omission that caused a deprivation (Doc. 76 at 9).  They submit that PHS cannot be liable for refusing to administer Avonex or Elavil, which were recommended by Dr. Nayer, because neither Dr. Mortenson nor the Medical Director—who is responsible for ordering medications—ever ordered the medications (id.).  Defendants conclude that the decision not to administer Avonex or Elavil was therefore solely Dr. Mortenson's decision and not due to any PHS policy or protocol (id.).

#### b. Plaintiff's Response

In response, Plaintiff states that Dr. Mortenson testified during his criminal proceedings that she could not prescribe MS treatment because PHS protocol did not allow such treatment (Doc. 88 at 3).  He argues that this is the reason why no request or order for Avonex or Elavil was submitted for approval (id.).  Plaintiff notes that he attempted to obtain copies of PHS policies but PHS refused to provide any copies, and he contends that the Court should not assume that there is no policy that prohibits the necessary treatment given Dr. Mortenson's testimony that PHS protocol in fact prohibited treatment (id. at 4-5).

Plaintiff also argues that PHS has been sued repeatedly for failure to treat inmates'

1   health problems and has incurred over 100 million dollars in failure-to-treat claims (id. at 5-

2   6).  In support, he submits copies of a "Loss Run" report from Chartis/IntelliRisk Services,

3   and a chart showing liability loss data from 2001-2010 (Doc. 88, Exs. E-F (Doc. 88 at 88-

4   136)).  He argues that this is strong evidence of a policy or protocol to not treat inmate health

5   concerns (id. at 6).

6                                    *c. Defendants' Reply*

7          Defendants contend that the record shows that Plaintiff was seen on numerous

8   occasions by Dr. Mortenson and medical staff for his MS and he saw a specialist offsite;

9   thus, demonstrating that there is no policy to refuse to treat inmates (Doc. 92 at 3).

10  Defendants state that no copies of policies were produced during discovery because no policy

11  prohibiting treatment for MS exists (id.).  As to Plaintiff's claims that PHS has incurred

12  millions of dollars in other prisoner cases, Defendants respond that reports of unrelated

13  claims are not relevant to Plaintiff's deliberate-indifference claim against PHS (id.).[6]

14         Lastly, Defendants dispute that Dr. Mortenson testified in state court as represented

15  by Plaintiff (id. at 4).

16         **3.  Existence of Policy/Protocol that Amounts to Deliberate Indifference**

17         In her affidavit, Saltsgiver states that PHS does not have any formal or informal

18  guidelines or policies that deal specifically with the treatment of MS (Doc. 76, Attach.

19  Saltsgiver Aff. ¶ 6 (Doc. 76-1 at 4)).  She refers to PHS "protocols whereby certain

20  medications have been pre-approved for treating patients in correctional facilities," and she

21  explains that a physician may request approval for a medication that has not been pre-

22  approved; however, no policies outlining these protocols or approval methods are attached

23  to Saltsgiver's affidavit or otherwise submitted by Defendants (id. ¶ 19 (Doc. 76-1 at 6-7)).

24  Further, Defendants do not indicate if any of the medications at issue in this case were pre-

25  approved under PHS protocol.

26

27

28  _____
    [6]Defendants' also object to Plaintiff's Exhibits E and F (Doc. 92). The Court
    addressed these exhibits when it granted Defendants' Motion for Protective Order (Doc. 93);
    therefore, Defendants' objection is moot (see Doc. 110).

1        Plaintiff relies on Dr. Mortenson's testimony in his state court proceeding, which,

2   according to Plaintiff, was that PHS protocol does not allow treatment of MS (Doc. 90, Pl.

3   Aff. ¶ 23).[7]   Although Defendants dispute Plaintiff's interpretation of Dr. Mortenson's

4   testimony, they do not submit a copy of the transcript or describe her specific testimony (see

5   Doc. 92 at 4 (no citation to the record to support dispute as to Dr. Mortenson's testimony)).[8]

6   In her affidavit, Dr. Mortenson attests that she refused to prescribe Avonex based on her own

7   medical judgment and "not due to any PHS policy or protocol that prohibited me from

8   prescribing this medication" (Doc. 76, Attach., Mortenson Aff. ¶ 13 (Doc. 76-1 at 14)).

9   Notably, she did not attest that there was no protocol that prohibited the prescribing of certain

10  medications.  The Court must take Plaintiff's allegations and evidence as true, and, without

11  the transcript evidence, there remains a question of fact whether Dr. Mortenson referred to

12  a PHS policy or protocol that prohibited her from treating Plaintiff's MS or prescribing

13  medications.

14       A policy or protocol that prohibits treatment or needed medications for a serious

15  medical condition like MS or the lack of a policy that results in the denial of treatment would

16  obviously constitute deliberate indifference.  See City of Canton, 489 U.S. at 390.  It follows

17  that if the PHS policy or protocol was different, Plaintiff would have been provided the

18  needed medications and MS treatment and not suffered a deprivation of his constitutional

19  rights.  See Gibson, 290 F.3d at 1196.

20       In sum, there exist material factual disputes whether there was a PHS protocol or the

21  lack of a needed policy that amounted to deliberate indifference and whether this was the

22  moving force behind Dr. Mortenson's alleged violation of Plaintiff's constitutional rights.

23

24       [7]The docket reflects that Plaintiff attempted, but was unable, to obtain the state court

25  transcripts, and the Court denied his motion to compel the Mohave County Superior Court
    to produce the transcripts for the reason that the state court was not a party to this matter

26  (Doc. 63, denying Doc. 41).

27       [8]The Court notes that in interrogatories, Plaintiff asked Dr. Mortenson to describe her
    testimony in his criminal case; however, her response simply states that she "testified

28  regarding the medical treatment provided to Plaintiff, consistent with Plaintiff's medical
    records" (Doc. 88, Attach. D, Dr. Mortenson's Resp. to Interrog. No. 10 (Doc. 88 at 47-47)).

Consequently, summary judgment will be denied to PHS on the claim in Count I.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 76).

(2) Defendants' Motion for Summary Judgment (Doc. 76) is **denied**.

DATED this 3rd day of January, 2013.

Robert C. Broomfield
Senior United States District Judge