WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

James Jackson Ellsworth,          )
                                  )
                Plaintiff,        )      No. CIV 11-8070 PCT RCB(MEA)
                                  )
          vs.                     )            O R D E R
                                  )
Prison Health Services,           )
Inc., et al.                      )
                                  )
                Defendants.       )
_____ )

        After the denial of defendants' motion for summary
judgment, plaintiff *pro se* James Jackson Ellsworth filed a host
of pre-trial motions.  More specifically, the following motions
are currently pending before the court: (1) a motion *in limine*
regarding his criminal history (Doc. 138); (2) a  motion to
appoint an expert witness (Doc. 139); (3)  a renewed motion for
sanctions (Doc. 144); (4) an "Objection to Defendant's [sic]
Notice of Appearance/Request to Remove Defendants['] Counsel"
(Doc. 148).  In addition, the plaintiff filed a motion for a
court order as to the affidavit of Stephen D. Brown (Doc. 155),
and a motion to obtain a court transcript (Doc. 157).  Although

1  the Honorable Mark E. Aspey, United States Magistrate Judge

2  recently issued an order denying those two motions (Doc. 162),

3  as more fully explained herein, this court is vacating that

4  order.

5      The court may quickly dispatch with plaintiff Ellsworth's

6  motion for sanctions because it is moot.  The plaintiff's other

7  motions warrant closer examination, however.

8  *I.  "Renewed Motion for Sanctions"*

9      The plaintiff is requesting that the court issue an order

10  to show cause and find the defendants in contempt for allegedly

11  failing to cooperate with him in preparing and filing the joint

12  proposed pre-trial order ("JPPTO").  As a sanction, the

13  plaintiff is also seeking a court order requiring the defendants

14  to pay him $65.00 for the costs he allegedly incurred in filing

15  this motion.

16      Granting the plaintiff's motion to extend the time in which

17  to file the JPPTO, the parties had until May 20, 2013, by which

18  to file that document.  See Ord. (Doc. 133) at 6:12-16[1], ¶ (2).

19  Tellingly, the plaintiff brought this motion ten days *prior* to

20  that court ordered deadline.  The plaintiff's motion was, thus,

21  premature.

22      More significantly, however, the plaintiff's motion is moot

23  because he has already received the primary relief which he is

24  seeking therein.  Accepting plaintiff's claim that he did not

25

26      [1]    For uniformity and ease of reference, all citations to page

27  numbers of docketed items are to the page assigned by the court's case
management and electronic case filing (CM/ECF) system.

28

1   receive a copy of the JPPTO, which the court sent to his last
2   known address (Doc. 145 Notice of Electronic Filing), the
3   defendants provided the plaintiff with another copy on August
4   29, 2013.  See Ord. (Doc. 160) at 1:27-2:1 (citation omitted).
5   The foregoing also renders moot the plaintiff's "supplemental
6   motion for sanctions[,]" which includes a request for an
7   extension of time in which to file the JPPTO.  See Pl.'s Supp.
8   Mot. (Doc. 150) at 3.  Accordingly, the court **denies** in its
9   entirety plaintiff's motion for sanctions (Doc. 144).

10  ## II.  *Brown Affidavit*

11      The plaintiff's motion as to the Brown affidavit has its
12  origins in the inadvertent disclosure to him of "sensitive and
13  confidential information . . . produced in error by Lexington
14  Insurance Company ("Lexington"), a non-party[.]"  See Mot. (Doc.
15  93) at 1:22-23.  That disclosure resulted in motion practice
16  before this court including a hearing on September 11, 2012.
17  Doc. 109.  Understandably, the Magistrate Judge was not as
18  familiar as is this court with the many nuances surrounding that
19  inadvertent disclosure, especially the representations during
20  that hearing made to this court by defense counsel Mary A. Palma
21  and fully discussed below.  In light of the foregoing, the court
22  is vacating the Magistrate Judge's order (Doc. 162) denying the
23  plaintiff's "Motion for District Court Order Re: Stephen D.
24  Brown Affidavit" and his "Motion for Transcripts" (Doc. 157),
25  and considers those two motions next.

26      Lexington is the insurer for the parent company of the
27
28

1  defendant Prison Health Services, Inc. ("PHS").[2]  Sept. 11, 2012

2  Audio Transcript ("Tr.") at 9:45:52 a.m. - 9:45:55 a.m.  PHS is

3  an additional insured on that policy.  Id. at 9:45:56 a.m. -

4  9:46:00 a.m.  The court assumes familiarity with Lexington's

5  inadvertent disclosure to the plaintiff of certain documents

6  ("the Lexington documents").  Some of that background bears

7  repeating though, as it directly relates to the plaintiff's

8  current motion to obtain the affidavit of Stephen D. Brown, PHS'

9  Senior Director of Professional Liability Claims, and the

10  appendices attached thereto.  Those three appendices outline the

11  categories of Lexington documents which PHS deems to be

12  protected: (1) Protected Health Information; (2) Work Product;

13  and (3) Commercially Sensitive Documents.  Id. at 9:51:22 a.m. -

14  9:53:57 a.m.  Mr. Brown's affidavit was exhibit "C" to PHS'

15  motion to strike the Lexington documents from the record and

16  require the plaintiff to return those documents ("the motion to

17  strike").  Defs.' Mot. (Doc. 93) at 12-14 (emphasis omitted).

18  After granting that motion to strike, the court also granted

19  PHS' separate motion to, among other things, seal the Brown

20  affidavit and the Lexington documents ("the sealing order").

21  See Ord. (Doc. 111).

22       During the hearing on PHS' motion to strike, the plaintiff

23

24

_____

25       [2]     As this court has previously recognized, "[a]fter PHS's parent
corporation was acquired, PHS was renamed" to  Corizon Health, Inc.

26  Ellsworth v. Prison Health Services Inc., 2012 WL 1107754, at *1 n. 1
(citation omitted); see also Ord. (Doc. 66) at 1, n. 1 (same).     "The

27  rights and obligations of PHS are properly asserted by and against Corizon
Health, Inc.[,]" as PHS concedes.  See Defs.' Mot. (Doc. 94) at 1:26, n. 1.

28  For consistency, the court will refer to this defendant as "PHS."

1   maintains that the court "ordered" PHS' counsel, Mary A. Palma,[3]

2   to provide the Brown affidavit to him.  Pl.'s Mot. (Doc. 155) at

3   2.   Attempting to obtain that affidavit, the plaintiff claims

4   that he made repeated telephone requests of J. Scott Conlon,

5   PHS' Phoenix based counsel.  But, despite repeated assurances by

6   Mr. Conlon, plaintiff claims that he has yet to receive the

7   Brown affidavit.  The plaintiff asserts that Mr. Brown is his

8   witness and that unspecified documents "potential[ly]" could be

9   used at trial.  Id. at 3.   Thus, the plaintiff is seeking a

10  court order requiring PHS to provide him with the Brown

11  affidavit.

12      Through attorney Conlon, the defendants[4] retort that the

13  plaintiff is "either misrepresenting or . . . misread[ing]" the

14  court's sealing order.   Resp. (Doc. 156) at 2:17.   The

15  defendants point out that that order mandates, among other

16  things, that the Brown affidavit "be placed under seal and not

17  incorporated into the regular record of this case[.]" Ord. (Doc.

18  111) at 1:21-22.  The defendants further note that the sealing

19  order requires the Brown affidavit to "remain under seal un[til]

20  further order of this Court."  Id. at 1:22.  Based upon the

21  foregoing, the defendants urge denial of plaintiff's motion to

22  obtain the Brown affidavit.

23      In his reply, the plaintiff clarifies that the sealing order

24

---

25      [3]   Ms. Palma is a Georgia attorney representing defendants PHS and
Dr. Kirsten Mortenson, and was admitted to practice before this court *pro
26  hac vice*.  Appl'n (Doc. 107).

27      [4]   Although PHS alone moved to strike and to seal the Lexington
documents, PHS and co-defendant, Dr. Kirsten Mortenson, are opposing the
28  plaintiff's motion to obtain the Brown affidavit.

1 is not the basis for this motion.  Rather, plaintiff Ellsworth

2 is relying upon his recollection of what transpired during the

3 September 11, 2012, hearing on PHS' motion to strike.  As the

4 plaintiff recalls it, during that hearing the court "ordered

5 defense counsel, Mary Ann Palmer [sic] to provide a copy" of the

6 Brown affidavit to him.  See Pl.'s Mot. (Doc. 155) at 2.    In

7 part because attorney Conlon was not present at that hearing,

8 the plaintiff is requesting that the court order a written

9 transcript to resolve this motion.  See Pl.'s Reply & Mot. (Doc.

10 157).

11    There is no need for a written transcript.  As with all

12 proceedings in this court, an electronic court recorder was

13 present, which means that this court has electronic access to

14 the entire September 11, 2012 hearing.  Accordingly, the court

15 **denies** the plaintiff's motion to obtain a written transcript of

16 that hearing (Doc. 157).

17    During that September 11th hearing, attorney Palma

18 expressly stated that it was her "intent" to provide the

19 plaintiff with a copy of the Brown affidavit, and that she could

20 not explain why he did not receive it prior to the hearing.  Tr.

21 at 9:42:00 a.m. – 9:42:10 a.m.  Opting to proceed with the

22 hearing, the court instructed attorney Palma that if during her

23 argument she alluded to the Brown affidavit, for the plaintiff's

24 benefit, she was to outline to what she was referring.  Id. at

25 9:42:19 a.m. – 9:42:42 a.m.  Attorney Palma advised that the

26 appendices to the Brown affidavit identified and described the

27 documents at issue.  Id. at 9:55:03 a.m. – 9:55:11 a.m.

28    After apologizing to the plaintiff for not having provided

him with a copy of that affidavit, attorney Palma stated that she did not anticipate that they would be going through each and every document during the hearing.   Id. at 9:55:12 a.m. – 9:55:21 a.m.   Attorney Palma hastened to add, however, "We'll certainly make sure that the plaintiff is given a copy of Steve Brown's affidavit and the documents that we are talking about." Id. 9:55:22 a.m. – 9:55:28 a.m.   She then opined that those "documents probably compromise not more than 30% of the total documents that were produced by Lexington." Id. at 9:55:31 a.m. – 9:55:40 a.m.

The plaintiff is under the mistaken impression that this court ordered PHS to provide him with a copy of the Brown affidavit.   As the electronic transcript reveals, however, it was defense counsel who volunteered not once, but twice, to provide the plaintiff with that affidavit.   So, despite the plaintiff's characterization, PHS has not acted "contrary to this court's order[]" by not providing him with the Brown affidavit.   See Pl.'s Mot. (Doc. 155) at 2.   Nonetheless, as an officer of the court, attorney Palma is bound by her representations during the hearing.

The sealing order still remains in effect though, as the defendants are quick to point out.   The defendants strongly imply that the effect of that order is to prohibit the plaintiff from obtaining the Brown affidavit, despite the fact that during the hearing attorney Palma explicitly agreed to provide that affidavit to the plaintiff.

In any event, LRCiv 5.6(f) is clear.   "If the Court orders the sealing of any document" thereunder, "the Clerk shall file

-7-

the order to seal and secure the sealed document from *public access.*"  LRCiv 5.6(f) (emphasis added).  That Rule does not preclude access of sealed documents to a party, such as plaintiff Ellsworth. Accordingly, the court hereby **grants** the plaintiff's motion (Doc. 155) to obtain the Brown affidavit and the three appendices thereto (Doc. 95).

### III.  *Felony Conviction Evidence*

     Plaintiff Ellsworth is seeking to preclude the defendants from introducing evidence of the felony conviction for which he is currently incarcerated.  As the plaintiff describes it, that conviction "is sexual in nature."  Pl.'s Mot. (Doc. 138) at 2. The plaintiff thus argues that not only will he be "unfair[ly] prejudiced" by the introduction of that evidence, but it is "not highly probative of [his] credibility." Id. (citation omitted). If the court will not exclude this evidence, the plaintiff is willing to make a limited admission.  He will "admit" that he has a felony conviction, but not that "it was for a sexual offense."  Id. at 3.

     The defendants respond, based upon Fed.R.Evid. 609, that if the plaintiff testifies, then they "are permitted to attack his character for truthfulness by using [that] criminal conviction." Defs.' Resp. (Doc. 142) at 2:18-19.  To impeach the plaintiff on cross-examination, the defendants want to introduce evidence that he is currently serving a ten-year sentence "for attempted molestation of a child and dangerous crimes against children, a class 3 felony." Id. at 2:4-5 (citing exh. A thereto, Inmate Data Sheet for James Ellsworth).  The defendants want to cross-examine the plaintiff about the fact and date of that

1  conviction, as well as "the nature of the crime charged[.]" <u>Id.</u>
2  at 4:14.  The defendants do not elaborate as to the latter; so,
3  it is unclear as to exactly what they mean by "the nature of the
4  crime charged[.]" <u>See id.</u>

5      At the same time, however, the defendants explicitly
6  "concede that they are not permitted to make inquiry into the
7  details of the underlying facts supporting Plaintiff's
8  conviction." <u>Id.</u> at 4:15-16.  Given that concession, presumably
9  the defendants are equating "the nature of the crime charged"
10 with "attempted molestation of a child and dangerous crimes
11 against children, a class 3 felony." <u>Id.</u> at 4:14; and at 2:4-5.
12 In any event, based upon Rule 609 and the federal cases
13 construing it, the defendants maintain that they have the "right
14 to impeach Plaintiff with his criminal conviction including the
15 *nature* of the *offense*." <u>Id.</u> at 5:23-24 (emphasis added).  Such
16 evidence is necessary, from the defendants' standpoint, for the
17 jury to fairly evaluate the plaintiff's credibility.

18     In rejoinder, the plaintiff points out that during the
19 majority of the time that he was housed at the Mohave County
20 Jail ("MCJ"), where his claims arose, he was a pre-trial
21 detainee – not a convicted felon.  The plaintiff did not become
22 a convicted felon until after his guilty plea, for which he was
23 sentenced on July 6, 2010.  Based upon this sequence of events,
24 the plaintiff contends that his "truthfulness cannot be
25 attacked" because he was innocent until he pled guilty.  Pl.'s
26 Reply (Doc. 145) at 2.  The plaintiff offers no legal support
27 for this novel proposition, and the court can conceive of none.
28     In another example of circular reasoning, the plaintiff

1  contends that because he is serving a sentence based upon his
2  guilty plea, his credibility is not at issue.   Rule 609 does
3  not distinguish, and neither will this court, however, between
4  convictions based upon a guilty plea and those obtained
5  following a trial.

6       In his reply, the plaintiff reiterates that given the nature
7  of his conviction, the prejudice far outweighs any possible
8  probative value; and, he disagrees with the defendants that a
9  limiting instruction can cure such prejudice.   Lastly, the
10 plaintiff maintains that because he will be testifying, the jury
11 can assess his credibility without evidence of his felony
12 conviction.

13      Federal Rule of Evidence 609 governs the admission of
14 evidence of a criminal conviction.   In pertinent part, that Rule
15 provides that evidence of a felony conviction "must be admitted,
16 subject to Rule 403, in a civil case . . . in which the witness
17 is not a defendant[.]" Fed.R.Evid. 609(a)(1)(A).   In turn, Rule
18 403 provides that relevant evidence may be excluded "if its
19 probative value is substantially outweighed by the danger of one
20 or more of the following: unfair prejudice, confusing the
21 issues, misleading the jury, undue delay, wasting time, or
22 needlessly presenting cumulative evidence." Fed.R.Evid. 403.

23      Applying Rule 609 in tandem with Rule 403, the court will
24 grant the plaintiff's motion to the extent that the defendants
25 may attempt to introduce evidence that he has been convicted of
26 "attempted molestation of a child and dangerous crimes against
27 children[.]" See Defs.' Resp. (Doc. 142) at 2:4-5.   The nature
28 of that conviction, as opposed to the fact of the conviction

itself, carries almost no probative weight.  Furthermore, the nature of plaintiff Ellsworth's conviction is highly prejudicial.  See U.S. v. Sherlock, 962 F.2d 1349, 1360 n. 4 (9th Cir. 1992) ("sex offense" conviction properly excluded because the resultant prejudice from its admission was "beyond question[]").  Moreover, allowing the jury to hear the nature of plaintiff Ellsworth's conviction has the potential to confuse the issues.

That does not mean that the defendants are completely barred from attempting to impeach the plaintiff's credibility with evidence of his felony conviction, but the scope of their inquiry is limited.  If plaintiff Ellsworth testifies, as he has indicated he will, the defendants may introduce evidence of the date of his felony conviction and that he is currently serving a ten year sentence for that conviction.  This evidence will be admitted for the limited purpose of impeachment, and the court will instruct the jury accordingly.  The defendants may not elicit testimony regarding the nature or any details or any facts underlying that conviction, or the name of the offense. Proceeding in this way is consistent with the Ninth Circuit's stance that "[a]bsent exceptional circumstances, evidence of a prior conviction admitted for impeachment purposes may not include collateral details and circumstances attendant upon the conviction." United States v. Osazuwa, 564 F.3d 1169, 1175 (9th Cir. 2009) (quotation marks and citations omitted).  Indeed, "[g]enerally, only the prior conviction, its general nature, and punishment of felony range [are] fair game for testing the defendant's credibility." Id. (internal quotation marks and

1  citations omitted).

2  ***IV.   Appointment of Expert Witness***

3       Prior to plaintiff's incarceration at the MCJ, Dr. Nayer

4  had been his treating neurologist for multiple sclerosis.

5  During the plaintiff's incarceration at the Florence facility,

6  defendant Dr. Mortenson had a telephone consult with Dr. Nayer

7  regarding an exacerbation of the plaintiff's multiple sclerosis.

8  Now, plaintiff Ellsworth is seeking to have the court appoint

9  Dr. Nayer as an expert pursuant to Fed.R.Evid. 706.

10       The plaintiff advances several reasons to justify such an

11  appointment.  First, he claims that Dr. Nayer is a "material

12  witness" because of a purported factual dispute.  Pl.'s Mot.

13  (Doc. 139) at 8.  Second, believing that the defendants will be

14  calling Dr. Mortenson "as an expert witness[,]" the plaintiff

15  claims that he is entitled to the appointment of Dr. Nayer as an

16  expert.  Id.  Even if the court does not appoint Dr. Nayer as an

17  expert, the plaintiff requests appointment of another

18  unidentified "expert witness to refute Dr. Mortenson's

19  testimony." Id. at 13. The plaintiff also contends that expert

20  evidence is necessary to establish the required standard of

21  care, as well as to show deliberate indifference to serious

22  medical needs in violation of the Eighth Amendment.  Finally,

23  although at this point the plaintiff does not have the funds to

24  pay for an expert witness, he is agreeable to having "the court

25  order him to pay for the expert when funds are available." Id.

26  at 10.

27       In opposing Dr. Nayer's appointment as an expert, the

28  defendants assert: (1) the discovery cut-off date under LRCiv.

- 12 -

16.2(b)(2) has expired; and (2) there is no need for an expert because in denying summary judgment, this court held that expert opinion is not required to prove deliberate indifference. Alternatively, if the court determines that "medical records, without more, constitute[] expert neurological opinion admissible at trial[,]" then the defendants request that they be allowed to depose plaintiff's proposed expert, and, in their discretion, that they be allowed to designate a rebuttal neurological expert.  Resp. (Doc. 143) at 1:21-22.

Plaintiff retorts that he is unaware of any rule requiring the appointment of an expert prior to summary judgment. Regardless, the plaintiff claims that no prejudice would result to the defendants if the court appoints an expert on his behalf.

Fed.R.Evid. 702 defines an expert witness as one "who is qualified as an expert by knowledge, skill, experience, training, or education[.]" Fed.R.Evid. 702.  Appointment of an expert witness is proper when "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed.R.Evid. 702(a).  Rule 706, which is the basis for plaintiff Ellsworth's motion, permits a court to appoint an expert witness, define the expert's duties and set compensation, including proportioning payment between the parties.  That Rule permits a district court "on its own motion" or on the motion of any party to enter an order "to show cause why expert witnesses should not be appointed [.]" Fed.R.Evid. 706(a).  A district court's decision under Rule 706 is subject to review under an abuse of discretion standard.  <u>See</u> <u>Walker v. American Home Shield Long Term</u>

1  Disability Plan, 180 F.3d 1065, 1070-71 (9th Cir. 1999).

2       Plaintiff Ellsworth, in seeking appointment of an expert
3  witness, and the defendants in opposing it, are missing a
4  critical point.  Regardless of the timing of this motion, Rule
5  706 does not authorize this court to appoint Dr. Nayer as
6  plaintiff's expert because that Rule "'[o]nly allows a court to
7  appoint a *neutral* expert.'"  See Womack v. GEO Group, Inc., 2013
8  WL 2422691, at *2 (D.Ariz. June 3, 2013) (quoting Gorton v.
9  Todd, 793 F.Supp.2d 1171, 1178 (E.D.Cal. 2011) (citation and
10 footnote omitted)) (emphasis added).  "'However, [r]easonably
11 construed, Rule 706 does not contemplate the appointment of, and
12 compensation for, an expert to aid one of the parties.'"  Id.
13 (quoting Hollis v. Sloan, 2010 WL 4069336, at *1 (E.D.Cal. Oct.
14 18, 2010) (other quotation marks and citation omitted)); see
15 also Antonetti v. Skolnik, 2013 WL 593407, at *4 (D. Nev. Feb.
16 13, 2013) (citing Gorton, 793 F.Supp.2d at 1177 n. 6) ("The Rule
17 [706] does not provide for the appointment of an expert to be an
18 advocate for the Plaintiff's position.") (other citation
19 omitted).  Indeed, "'[t]he principal purpose of a courtappointed
20 [sic] expert is to assist the trier of fact, *not to serve as an*
21 *advocate*.'"  Id. (quoting Hollis, 2010 WL 4069336, at *1)
22 (emphasis added).  Put slightly differently, "[e]xpert
23 witnesses, . . . , cannot be appointed solely to aid the
24 litigant in presenting his case, witnesses can *only* be appointed
25 where necessary to *aid* the *court*."  Bovarie v. Schwarzenegger,
26 2011 WL 7468597, at *20 (S.D.Cal. Sept. 21, 2011) (citations
27 omitted) (emphasis added), *adopted in whole*, 2012 WL 760620
28 (S.D.Cal. March 7, 2012).  As can be seen, Rule 706 does not

1  authorize appointment of Dr. Nayer as an expert because
2  plaintiff Ellsworth is seeking his appointment, not as a neutral
3  expert, but to advocate on the plaintiff's behalf.   Although
4  this reason alone is more than a sufficient basis for denying
5  the plaintiff's motion to appoint an expert, there are other
6  reasons as well.

7  Another equally compelling reason for denying this motion
8  is that the plaintiff has not shown how Dr. Nayer's testimony
9  will assist the trier of fact in understanding the evidence or
10 in determining an issue of fact.   As to the latter, the
11 plaintiff claims that there is a disputed factual issue as to
12 whether he was seen by Dr. Nayer or his physician's assistant.
13 Plainly, however, a fact finder does not need any "scientific,
14 technical, or other specialized knowledge" to resolve that
15 claimed issue.   See Fed.R.Evid. 702(a).

16 Further, in arguing that he needs an expert to refute the
17 testimony of Dr. Mortenson, the plaintiff misconceives the
18 capacity in which she will be called to testify.   Dr. Mortenson
19 is a party to this action; she is not an expert witness.   In
20 fact, the defendants "have not named a designated expert."
21 Resp. (Doc. 143) at 2:8.   The foregoing undermines the
22 plaintiff's argument that he is entitled to an expert to refute
23 Dr. Mortenson's testimony.

24 "District '[c]ourts do not commonly appoint an expert
25 pursuant to Rule 706 and usually do so only in 'exceptional
26 cases in which the ordinary adversary process does not suffice'
27 or when a case presents compelling circumstances warranting
28 appointment of an expert.'" Womack, 2013 WL 2422691, at *2

(quoting <u>Hart v. Agnos</u>, 2008 WL 2008966, at *5 (D. Ariz. April 25, 2008) (citations omitted)).  Plaintiff Ellsworth has made neither showing.  Without diminishing the significance of this action to the parties, it does not fall into the category of "exceptional cases in which the ordinary adversary process [will] not suffice[.]" <u>See</u> <u>id.</u> (internal quotation marks and citations omitted).

Likewise, there are no "compelling circumstances warranting appointment of an expert[]" here.  <u>See</u> <u>id.</u> (internal quotation marks and citations omitted).  The remaining issues are relatively straightforward and pertain primarily to the issue of whether the defendants were deliberately indifferent to the plaintiff's serious medical needs.  "[E]ssentially[,]" this is "a question of subjective action or intent." <u>Antonetti</u>, 2013 WL 593407, at *6 (citing <u>Ledford v. Sullivan</u>, 105 F.3d 354, 359 (7th Cir. 1997)).  Hence, "an expert would not . . . assist[]" in making this subjective determination.  <u>Id.</u>

As in <u>Ledford</u>, "the question of whether the [defendants] displayed deliberate indifference toward [Ellsworth's] serious medical needs d[oes] not demand that the jury consider probing, complex questions concerning medical diagnosis and judgment." <u>See</u> <u>Ledford</u>, 105 F.3d at 359; <u>see</u> <u>also</u> <u>Bovarie</u>, 2011 WL 7468597, at *20 (denying appointment of a medical expert under Rule 706 on an Eighth Amendment claim because such an expert "would not add anything on the questions of whether Defendants . . . perceived a serious medical need or whether they consciously disregarded that need[]").  Succinctly put, "[e]xpert testimony is not required to adequately evaluate evidence of Defendants'

state of mind at the time of the incident." <u>Id.</u>   And, despite plaintiff Ellsworth's contrary assertion, because this case involves deliberate indifference and not medical malpractice, an expert is not needed to assist the fact finder "in determining and applying the appropriate standard of care[.]" <u>See</u> <u>Antonetti</u>, 2013 WL 593407, at *6 (citing <u>Ledford</u>, 105 F.3d at 359 ("The test for deliberate indifference is not as involved as that for medical malpractice, an objective inquiry that delves into reasonable standards of medical care.")).

Lastly, despite what plaintiff Ellsworth implies, his *in forma pauperis* status pursuant to 28 U.S.C. § 1915 does not alter the foregoing analysis.   Section 1915 "'does not waive payment of fees or expenses for witnesses.'" <u>Watkins v. Baum</u>, 2012 WL 5328734, at *1 (W.D.Wa. Oct. 29, 2012) (citing <u>Dixon v. Ylst</u>, 990 F.2d 478, 480 (9th Cir. 1993)).   "More specifically, '[t]he plain language of section 1915 does not provide for the appointment of expert witnesses to aid an indigent litigant.'" <u>Id.</u> (quoting <u>Pedraza v. Jones</u>, 71 F.3d 194, 196 (5th Cir. 1995)) (other citations omitted).   Additionally, as in <u>Womack</u>, the "[p]laintiff has not pointed to, and the [c]ourt's independent research has not discovered, any federal statute authorizing the expenditure of public funds for the appointment of an expert witness to assist a *pro se* party in litigation." <u>Womack</u>, 2013 WL 2422691, at *2.   Thus, plaintiff Ellsworth cannot rely upon Rule 706 "as a means of sidestepping Section 1915 and its prohibition against appointing an expert witness to assist indigent litigants." <u>See</u> <u>Bovarie</u>, 2011 WL 7468597, at *20 (internal quotation marks and citations omitted).

1   For all of these reasons, the court finds that plaintiff
2   Ellsworth's motion to appoint an expert falls outside the scope
3   of Fed.R.Evid. 706, and must be denied.[5]

4   ***V.   "Objection to Notice of Appearance"/Request to Remove***
5   ***Defense Counsel***

6   On April 30, 2010, the plaintiff, through his criminal
7   counsel, appeared at a hearing in the Superior Court in Mohave
8   County.   The plaintiff was seeking an order "requir[ing] the
9   jail to provide additional medical treatment." Defs.' Resp.
10  (Doc. 152) at 2:9-10.   During that hearing, the Mohave County
11  prosecutor argued and Dr. Mortenson testified.   See id.   There
12  is no dispute that Tophas Anderson, IV, an attorney with Renaud
13  Cook Drury Mesaros, PA, the law firm representing the defendants
14  herein, attended that hearing, but did not participate.   See
15  Pl.'s Mot. (Doc. 148) at 2; and Defs.' Resp. (Doc. 152) at 2:13-
16  14.

17  On May 9, 2013, attorney Anderson entered his appearance,
18  to which the plaintiff now objects, in this action on behalf of
19  the defendants, "in association with J. Scott Conlon," another
20  attorney with the Renaud law firm.   See Not. (Doc. 141) at 1:16-
21  17.   The plaintiff is seeking to  "remove" or, as the court

23  _____   [5]   In its summary judgment order, the court did indicate that "the
24  evidence includes expert medical opinion in the form of treatment
    recommendations from Dr. Nayer, an expert[,]" which it found "support[ed]
25  Plaintiff's opposition to summary judgment."  Ord. (Doc. 127) at 15:26-28.
    The defendants correctly read that order to mean that the court so found
26  for the purposes of summary judgment only, but not for trial purposes.
    Thus, because the court is not accepting Dr. Nayer's treatment
27  recommendations as the equivalent of a neurological expert opinion at
    trial, there is no need for the defendants, as they urge, to depose Dr.
28  Nayer and, at their discretion, "designate their own neurological expert."
    Defs.' Resp. (Doc. 143) at 3:12-13.

- 18 -

construes his motion, to disqualify attorney Anderson from representing the defendants in this case. Pl.'s Mot. (Doc. 148) at 1. Plaintiff Ellsworth claims that attorney Anderson has a "conflict of interest" because he is a "potential witness" for the plaintiff at trial. Id. at 2. The plaintiff acknowledges that he intends to question attorney Anderson as to why defendant PHS "sent [him] to the plaintiff's criminal case[,]" but he is adamant that he will not ask any questions pertaining to attorney-client privilege or work product. Id. at 2-3.

In arguing for the denial of this motion, the defendants point to the plaintiff's lack of supporting legal authority. They also advance three specific merit based reasons for denial. First, the defendants maintain that calling attorney Anderson as plaintiff's witness will result in improper "questions about communications that are protected by the attorney-client privilege." Defs.' Resp. (Doc. 152) at 3:15-17 (citation omitted). Second, the defendants posit that the plaintiff lacks standing to waive the attorney-client privilege because the defendants hold that privilege – not the plaintiff. Third, reading the plaintiff's motion as asserting a conflict because attorney Anderson represented them in the plaintiff's criminal case and in this civil action, the defendants argue that no conflict exists. That is not the basis for the plaintiff's claimed conflict, however. As the court interprets the plaintiff's argument, the conflict arises because he plans to call attorney Anderson as a witness in the trial of this action. Regardless, the defendants argue that the plaintiff has not met his "heavy burden" warranting disqualification of attorney

1  Anderson.  Id. at 5.

2      With one exception, there are no marked differences between
3  the plaintiff's disqualification motion and his reply.
4  Plaintiff Ellsworth continues to strenuously deny that by
5  calling attorney Anderson as his witness, he is trying to probe
6  into privileged attorney-client communications.  However, in his
7  reply, for the first time, the plaintiff mentions that he has
8  obtained the criminal hearing transcripts.  Evidently, relying
9  upon those transcripts, the plaintiff intends to question
10 defendant Mortenson about her testimony in the criminal case.
11 Without commenting one way or the other on the propriety of such
12 testimony by Dr. Mortenson, the court fails to see the
13 connection between any such testimony and this motion to
14 disqualify attorney Anderson as one of the defense lawyers.  Dr.
15 Mortenson's testimony in plaintiff's criminal case simply has no
16 bearing on the disqualification issue now before the court.

17     That said, the broader issue still remains as to whether the
18 court should grant the plaintiff's motion to remove attorney
19 Anderson as defense counsel.  As can be seen, the defendants'
20 opposition raises issues of attorney-client privilege and
21 attorney disqualification, which the court will separately
22 address.

23     **_1.  Attorney-Client Privilege_**

24     "The attorney-client privilege protects confidential
25 communications between attorneys and clients, which are made for
26 the purpose of giving legal advice." United States v. Richey,
27 632 F.3d 559, 566 (9th Cir. 2011) (citing Upjohn Co. v. United
28 States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584

(1981)).  "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."[6]  _Upjohn_, 449 U.S. at 389.  The purpose of that privilege is "to protect confidential communications between a party and its attorney in order to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'"  _Elan   Microelectronics   Corp.   v.   Pixcir Microelectronics Co. Ltd._, 2013 WL 4499006, at *3 (D.Nev. Aug. 14, 2013) (quoting _Upjohn_, 449 U.S. at 389).  "The Ninth Circuit has adopted Dean Wigmore's articulation of the elements of the attorney-client privilege: (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are, at that instance, permanently protected, (7) from disclosure by the

---

[6]    The defendants, in invoking the attorney-client privilege, mistakenly rely heavily upon Arizona law.  _See_, _e.g._, Defs.' Resp. (Doc. 152) at 2:21-4:14.   However, "[i]ssues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law."  _United States v. Ruehle_, 583 F.3d 600, 608 (9th Cir. 2009) (internal quotation marks and citations omitted).   Indeed, "since the adoption of the Federal Rules of Evidence, courts have uniformly held that federal common law of privilege, not state law applies."  _United States v. Blackman_, 72 F.3d 1418, 1423 (9th Cir. 1995) (internal quotation marks and citations omitted).  Thus, in _Ruehle_, the Ninth Circuit held that it was reversible error for the district court to rely "almost exclusively upon California state law to define the attorney-client relationship and the attorney-client privilege."  _Ruehle_, 583 F.3d at 608.  The _Ruehle_ Court admonished the district court for not "referencing the well-established eight-part test" which the Ninth Circuit has adopted (and is set forth above) for determining whether an attorney-client privilege exists.  _Id._ As is readily apparent, this court must apply the federal common law of attorney-client privilege here, and not, as the defendants suggest, Arizona state law.  _See_, _e.g._, Defs.' Resp. (Doc. 152) at 3:18 (plaintiff's "request" to question Mr. Anderson regarding attorney-client communications "violates Arizona law[]").

1   client or by the legal advisor, and (8) unless the protection is
2   waived." Id. (citing, *inter alia*, In re: Fischel, 557 F.2d 209,
3   211 (9th Cir. 1977)).

4       "Under federal law, the attorney-client privilege is
5   strictly construed." Ruehle, 583 F.3d at 608. That is
6   "'[b]ecause it impedes full and free discovery of the truth[.]'"
7   Elan, 2013 WL 4499006, at *4 (quoting Weil v.
8   Investment/Indicators, Research and Management, Inc., 647 F.2d
9   18, 24 (9th Cir. 1980)). "The burden is on the party asserting
10  the privilege to establish *all* the elements of the privilege."
11  United States v. Martin, 278 F.3d 999-1000 (9th Cir. 2002)
12  (citation omitted) (emphasis added). Here, the defendants, as
13  "[t]he party asserting the attorney-client privilege[,] ha[ve]
14  the burden of establishing the relationship *and* privileged
15  nature of the communication." Richey, 632 F.3d at 566 (citation
16  omitted) (emphasis omitted). "A party claiming the privilege
17  must *identify specific communications and the grounds supporting*
18  *the privilege* as to each piece of evidence over which privilege
19  is asserted." Martin, 278 F.3d at 1000 (citation omitted)
20  (emphasis added). "Blanket assertions are extremely
21  disfavored." Id. (internal quotation marks and citation
22  omitted).

23      Further "[w]hat is vital to the privilege is that the
24  communication be made in confidence for the purpose of obtaining
25  *legal* advice *from the lawyer*.'" Richey, 632 F.3d at 566 n. 3
26  (quoting United States v. Gurtner, 474 F.2d 297, 299 (9th Cir.
27  1973) (emphasis in original) (other quotation marks and citation
28  omitted). It is worth noting that "[t]he fact that a person is

a lawyer does not make all communications with that person privileged." Martin, 278 F.3d at 999 (citation omitted). "The party asserting the privilege must, at a minimum, make a prima facie showing that the privilege protects the information the party intends to withhold." Elan, 2013 WL 44990006, at *4 (citation omitted).

The defendants have not met their burden of proof on this record. According to the defendants, plaintiff Ellsworth "expressly *admits* that he intends to call Mr. Anderson to the stand for the sole purpose of asking him questions about communications that are protected by the attorney-client privilege." Defs.' Resp. (Doc. 152) at 3:15-17 (citation omitted) (emphasis added). The plaintiff made no such admission, however. What the plaintiff actually wrote is that he "plan[s] on calling Mr. Anderson as a witness for a simple line of questioning as to why defendant [PHS] sent Mr. Anderson to the plaintiff's criminal case." Mot. (Doc. 148) at 2. The defendants are assuming that attorney Anderson's response will reveal that he and PHS communicated in confidence for the purpose of obtaining legal advice. That is speculation, however, and cannot be ascertained on this record, especially given the defendants' failure to "make a specific proffer of what communications, if any, are subject to the attorney-client privilege[.]" See United States v. Sakai, 2011 WL 2581909, at *8 (D. Hawai'i June 7, 2011), adopted, 2011 WL 2600553 (D. Hawai'i June 28, 2011).

Moreover, the defendants cannot avail themselves of any presumptions to overcome this lack of proof. See In re Hotels

1  <u>Nevada, LLC</u>, 458 B.R. 560, 573 (Bkrtcy.D.Nev. 2011) (quoting
2  1 PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES,
3  § 11:10 (2011)) (other citations omitted) ("'The proponent of
4  the privilege bears the burden of persuasion for each element of
5  the privilege, unassisted by presumptions that confidentiality
6  was intended and has been preserved, or that legal advice was
7  being sought through the consultations.'") Therefore, because
8  the defendants "did not make a specific proffer of what
9  communications, if any . . . are the subject of the attorney-
10 client privilege" as to attorney Anderson's potential testimony,
11 the court will not, at this juncture, prohibit the plaintiff
12 from calling attorney Anderson as a witness at trial.   <u>See</u>
13 <u>Richey</u>, 632 F.3d at 567 (citations omitted).   That does not
14 necessarily mean that the court will allow attorney Anderson to
15 testify at trial, however.  At that time, the defendants will be
16 free to make a specific proffer as to any claimed privileged
17 attorney-client communication.

18      ***2.  Attorney Disqualification - Advocate-Witness Rule***

19      As the defendants are quick to point out, plaintiff
20 Ellsworth did not cite any authority for his motion to
21 disqualify attorney Anderson.  Given that the plaintiff is
22 seeking to disqualify Anderson because he will be a witness at
23 trial, clearly, the predicate for this motion is Ethical Rule
24 ("ER") 3.7(a) of the Arizona Rules of Professional Conduct.
25 That Rule applies to attorneys appearing before this court in
26 accordance with LRCiv 83.2(e).  ER 3.7(a) prohibits an attorney
27 from acting both as an advocate and a witness at trial.  In
28 particular, that Rule states in relevant part:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> > (1) the testimony relates to an uncontested issue;
> >
> > (2) the testimony relates to the nature and value of legal services rendered in the case; or
> >
> > (3) disqualification of the lawyer would work substantial hardship on the client.

Ariz. Sup.Ct. R. 42, Rules of Prof'l Conduct, ER 3.7(a)(2013). "[T]he reason for th[is] advocate-witness rule is possible prejudice at trial: A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." Hillis v. Heineman, 2009 WL 798872, at *1 (D.Ariz. Mar. 25, 2009) (internal quotation marks and citations omitted).

"To avoid the use of ethical rules for the tactical disqualification of opposing counsel, Arizona law provides that '[o]nly in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent.'" Tavilla v. Cephalon, Inc., 2012 WL 4466544, at *2 (D.Ariz. Sept. 27, 2012) (quoting Alexander v. Superior Court, 141 Ariz. 157, 685 P.2d 1309, 1313 (Ariz. 1984)). "As the Ninth Circuit has noted, disqualification motions should be subjected to 'particularly strict scrutiny' because of their potential for abuse." Karlsson Group, Inc. v. Langley Farms Invs., LLC, 2009 WL 2843290, at *3 (D.Ariz. Sept. 1, 2009) (quoting Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd., 760 F.2d 1045, 1050 (9th Cir. 1985)); accord

1   <u>Security General Life Ins. Co. v. Superior Court</u>, 149 Ariz. 332,
2   718 P.2d 985, 988 (Ariz. 1986) (Motions to disqualify "require
3   careful   scrutiny   of   the   facts   before   such   a   result   is
4   permitted.") Thus, in carrying out its "duty and responsibility
5   of supervising the conduct of attorneys who appear before it[,]"
6   <u>Erickson v. Newmar Corp.</u>, 87 F.3d 298, 300 (9th Cir. 1996), this
7   court "must . . . be solicitous of a client's right freely to
8   choose   his   counsel   and   be   wary   of   disqualification   motions
9   interposed for tactical reasons[.]" <u>Jamieson v. Slater</u>, 2006 WL
10  3421788, at *3 (D.Ariz. Nov. 27, 2006) (internal quotation marks
11  and   citation   omitted).     At   the   same   time,   however,   "as   the
12  Arizona   Supreme   Court   has   acknowledged,   .   .   .   'the   rules   do
13  permit   a   party   to   call   adverse   counsel   as   a   witness   and
14  therefore   there   are   times   when   counsel   must   be   disqualified
15  because   an   adverse   party   intends   to   call   him   as   a   witness.'"
16  <u>Tavilla</u>, 2012 WL 4466544, at *2 (quoting <u>Security General</u>, 718
17  P.2d at 988).

18      A lawyer may be disqualified under ER 3.7(a) only if he is
19  a   "necessary   witness."     Arizona   applies   a   "dual   test   for
20  'necessity.'"   <u>Security General</u>, 718 P.2d at 988.   Under   the
21  first   prong   of   that   test,   "the   proposed   testimony   must   be
22  relevant and material." <u>Id.</u>  Second, that testimony "must also
23  be unobtainable elsewhere."   <u>Id.</u>   Significantly, "[a] party's
24  mere declaration of an intention to call opposing counsel as a
25  witness is an insufficient basis for disqualification even if
26  that counsel could give relevant testimony." <u>Id.</u> (citation
27  omitted).   This district court "is vested with 'substantial
28  latitude' in deciding  whether and when to disqualify counsel."

1  <u>United States v. Saathoff</u>, 2007 WL 2990014, at *1 (S.D.Cal. Oct.

2  11, 2007) (quoting <u>United States v. Frega</u>, 179 F.3d 793, 800 (9th

3  Cir. 1999)).   As the moving party, plaintiff Ellsworth "has the

4  burden of "sufficiently showing why the [c]ourt should not

5  uphold the presumption against disqualification of opposing

6  counsel."   <u>Karlsson Group</u>, 2009 WL 2843290, at *3 (citation

7  omitted).

8       On this record, plaintiff Ellsworth has not met that "high

9  burden[.]" <u>See</u> <u>id.</u> (citation omitted).   In the lodged JPPTO, the

10 plaintiff lists attorney Anderson as a witness, indicating that

11 he "is expected to testify to the reason he made an appearance

12 with Defendant Mortenson in Plaintiff's criminal case on . . .

13 April 20, 2010."   JPPTO (Doc. 154) at 11:15-16, ¶ F(3).   The

14 plaintiff's disqualification motion and reply echo that

15 statement.   In both, as already explained, the plaintiff states

16 that he wants to question attorney Anderson as to why the

17 defendants had him appear at the plaintiff's criminal

18 proceeding.

19      None of the foregoing is responsive, however, to the first

20 test of necessity.   The plaintiff has not explained how such

21 testimony is "relevant and material" to the critical issues at

22 trial pertaining to his claims of deliberate indifference.

23 Furthermore, there is nothing in the record as to the second

24 prong of necessity.   The plaintiff has not shown that attorney

25 Anderson's testimony, whatever it purports to be, is

26 "unobtainable elsewhere."   Given Arizona's presumption against

27 disqualifying opposing counsel, and the plaintiff's lack of the

28 necessary proof to support disqualification, the court **denies**

1   this motion.  <u>See</u> <u>In re Moore</u>, 488 B.R. 120, 127 (D. Hawai'i

2   2013) (citations omitted) (no abuse of discretion where court

3   denied debtor's motion to disqualify attorney and law firm where

4   the debtor did not "explain what testimony she intended to

5   obtain from [that attorney], nor whether it was [un]available

6   from other sources[]"); <u>Dealer Computer Services, Inc. v.</u>

7   <u>Fullers' White Mtn. Motors, Inc.</u>, 2008 WL 828732, at *6 (D.Ariz.

8   Mar. 26, 2008) (refusing to disqualify plaintiffs' counsel in

9   light of Arizona law's presumption against disqualification, and

10  because the defendants did not meet their burden of showing the

11  necessity of plaintiffs' counsel as a witness).

12      As just explained, the court denies the plaintiff's motion

13  to disqualify attorney Anderson to serve as defense counsel in

14  this case.  Resolution of the issue of whether the plaintiff may

15  call Mr. Anderson as a witness at trial, and the extent of his

16  testimony, if any, will have to await trial though.  At that

17  time, the court will entertain the parties' respective proffers.

18      For the reasons set forth above, the court hereby **ORDERS**

19  that:

20      (1) The reference to the Magistrate Judge is **withdrawn** as

21  to:

22          (a) Plaintiff's Motion *in Limine* Re:
             Plaintiff's Criminal History (Doc. 138);
23
             (b) Plaintiff's Motion to Appoint Expert
24           Witness for Trial (Doc. 139); and

25           (c) Plaintiff's Renewed Motion for Sanctions
             Against Defendants/Request for Show Cause
26           Hearing (Doc. 144);

27  the court **FURTHER ORDERS** that:

28      (2) the Plaintiff's Motion *in Limine* Re: Plaintiff's

Criminal History (Doc. 138) is **GRANTED** to the extent that the defendants may not introduce evidence of the specifics of the plaintiff's felony conviction, but it is **DENIED** insofar as the defendants are seeking to introduce evidence of the date of plaintiff's felony conviction and that he is currently serving a ten year sentence for that conviction. This evidence will be **admitted** for the **limited purpose of impeachment**.

(3) the Plaintiff's Motion to Appoint Expert Witness for Trial (Doc. 139) is **DENIED**;

(4) the Plaintiff's Renewed Motion for Sanctions Against Defendants/Request for Show Cause Hearing (Doc. 144) is **DENIED**;

(5) the Plaintiff's Objection to Defendants['] Notice of Appearance/Request to Remove Defendants['] Counsel (Doc. 148) is **DENIED**; and

(6) the plaintiff's "Motion for District Court Order Re: Stephen D. Brown Affidavit" (Doc. 155) is **GRANTED**;

   (a) the defendants shall provide a copy of the Brown affidavit and the three appendices attached thereto to plaintiff within **fifteen (15) days** from the date of entry of this order; and

   (b) the plaintiff shall refrain from disclosing to anyone, whether orally or in writing, the information contained in any of the documents provided pursuant to paragraph (6);

(7) the plaintiff's "Motion for Transcripts" (Doc. 157) is **DENIED**;

(8) the plaintiff's "Motion to Reconsider Magistrate's Order" (Doc. 163) is denied;

(9) the parties are to appear telephonically on the 13th day of January, 2014 at 10:00 a.m. for the purpose of discussing the time frames which need to be determined with respect to their Joint Pretrial Statement and Final Pretrial Order (Doc. 154). Defense counsel shall provide the Court with a telephone number where plaintiff may be contacted and make the necessary arrangements for his appearance by telephone at the hearing; and

. . .

1    (9) with respect to the Joint Pretrial Statement and Final
2    Pretrial Order (Doc. 154), in light of the rulings herein, the court strikes page 18:19-23.

3    DATED this 12th day of December, 2013.

4

5

6    _____
     Robert C. Broomfield
7    Senior United States District Judge

8

9

10

11   Copies to plaintiff *pro se* and all counsel of record

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28